[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 294 
These cases arise out of a proposal by Alabama Disposal Solutions-Landfill, L.L.C. ("ADS"), to operate a landfill in Lowndes County to be known as the Tallawassee Ridge Solid Waste Facility.
On August 10, 1998, the Lowndes County Commission ("the County") adopted a resolution granting "host-government" approval for the landfill. On that same day, the County and ADS entered into a contract. On August 24, 1998, the parties executed an addendum to the contract. The contract and the addendum provided that the County would receive "tipping" fees from ADS; those fees were to be calculated based on the number of tons of waste disposed of at the landfill.
On December 8, 1998, the Town of Lowndesboro ("Lowndesboro") enacted Ordinance 98-1, prohibiting landfills within its corporate city limits and within its police jurisdiction. Approximately 20 acres of the proposed landfill lie within Lowndesboro's police jurisdiction, but outside its city limits.[1] At the time the Ordinance *Page 295 
was enacted, the County had a solid-waste-management plan in place pursuant to the requirements of § 22-27-47, Ala. Code 1975. Lowndesboro did not have its own solid-waste-management plan; therefore, Lowndesboro fell under the County plan. See § 22-27-47(a). On January 19, 1999, ADS filed an application with the Alabama Department of Environmental Management ("ADEM") for a solid-waste permit.[2] Under Ala. Admin. Code, r. 335-13-5-.02(1)(f), an applicant for a solid-waste permit is required to provide ADEM with a list of adjacent property owners. Although Lee Frazer owns land adjacent to the proposed landfill, ADS did not list Frazer as an adjacent property owner; therefore, ADEM did not send her notice, pursuant to Ala. Admin. Code, r.335-13-5-.03(1)(b)2., of ADEM's intent to consider ADS's solid-waste-permit application.
On June 8, 2000, ADEM published notice of its intent to consider ADS's solid-waste-permit application. ADEM received comments on the proposed landfill and decided that under its regulations, no additional public hearing was necessary. ADEM determined that the permit application met all technical requirements under Division 13 of ADEM's regulations (Ala. Admin. Code, r. 335-13-1 et seq.), which pertains to solid waste, and on July 19, 2000, ADEM issued a solid-waste permit to ADS ("the ADS Permit").
At the time ADEM issued the ADS permit, ADEM had developed both phases of a two-phase, solid-waste-management plan for the State pursuant to Article 3 of the Solid Waste Act, § 22-27-40 et seq., Ala. Code 1975. However, ADEM had not formally adopted either phase of the plan as a "final regulation" as contemplated by § 22-27-45(4)d., Ala. Code 1975.[3]
 The Administrative Appeal
After ADEM issued the ADS Permit, Lowndesboro and Frazer filed an administrative appeal with the Environmental Management Commission ("EMC"), seeking revocation of the ADS Permit. ADS, as owner of the ADS Permit, intervened as a matter of right in the appeal before the EMC. Lowndesboro and Frazer state that among the issues raised before the EMC were the lack of notice to Frazer and the allegation that the landfill would be in violation of Ordinance 98-1. Extensive discovery was conducted in preparation for a hearing before the EMC, which was set for December 19, 2000. However, the administrative appeal was stayed by an injunction granted by the Montgomery Circuit Court, as outlined below.
The Montgomery County Declaratory-Judgment Action
While the administrative appeal was pending, Lowndesboro and Frazer filed a complaint for a declaratory judgment against ADEM in the Montgomery Circuit Court, seeking to have the ADS Permit declared invalid. Thereafter, Lowndesboro and Frazer amended their complaint four times and added numerous additional grounds upon which they claimed the ADS Permit should be declared invalid. Among other things, Lowndesboro and Frazer *Page 296 
alleged that ADEM's failure to adopt a state solid-waste-management plan as a regulation, pursuant to § 22-27-45(4)d., violated Article 3 of the Solid Waste Act, and that ADEM failed to notify Frazer, as required by Ala. Admin. Code, r. 335-13-5-.03(1)(b)2, of ADEM's intent to consider ADS's solid-waste-permit application.
On October 24, 2000, Lowndesboro and Frazer filed a request for a stay, seeking to stay all proceedings before the EMC concerning the issuance of the ADS Permit because, they said, (1) ADEM's failure to adopt a solid-waste-management plan as a final regulation under §22-27-45(4)d. voided its permitting authority, and (2) the lack of notice to Frazer invalidated the ADS Permit. ADEM filed a response to Lowndesboro's and Frazer's stay request, alleging that there was no legal basis for staying the administrative proceedings before the EMC.
On November 3, 2000, a hearing was held on Lowndesboro and Frazer's request for a stay. At the hearing, ADS appeared and filed a proposed answer and a motion to intervene as a matter of right. The Montgomery Circuit Court accepted ADS's motion to intervene and conditionally granted intervention for the limited purpose of appearing at the motion hearing.
On November 29, 2000, the Montgomery Circuit Court entered an order, among other things, staying all proceedings pertaining to the issuance of the ADS Permit. That order enjoined "all proceedings concerning the issuance of a Solid Waste Permit to Alabama Disposal Solutions Landfill for the operation of the Tallawassee Ridge Solid Waste Facility . . . pending adoption of a State Solid Waste Plan by the Alabama Department of Environmental Management." ADEM and ADS have appealed to this court from that order, and those appeals (2000294 and 2000324) have been consolidated by this court by agreement of the parties.
On October 9, 2001, the EMC, at the request of ADEM, adopted a state solid-waste-management plan as an "emergency rule" pursuant to Ala. Code 1975, § 41-22-5. See Ala. Admin. Code, r. 335-13-9. Under §41-22-5, this plan was effective only for 120 days. On February 5, 2002, however, ADEM adopted a state solid-waste-management plan as a final regulation.
As a result of the adoption by ADEM of the emergency rule, the trial court lifted its stay of the administrative proceedings relating to the issuance of the permit.[4] Consequently, Lowndesboro and Frazer move this court to dismiss these appeals as moot.
The relief sought in these appeals by ADEM and ADS was relief from the trial court's order staying all ADEM proceedings relating to the issuance of the permit. Indeed, the sole basis for the jurisdiction of this court in these appeals was that interlocutory injunctive order. See Rule 4(a)(1)(A), Ala.R.App.P. With the lifting of the stay, there is no longer any need for the relief sought in these appeals. See Jacobs Banking Co.v. Campbell, 406 So.2d 834 (Ala. 1981); Byrd v. Sorrells, 265 Ala. 589,93 So.2d 146 (1957); Ex parte McFry, 219 Ala. 492, 122 So. 641 (1929). The issues raised in these appeals are thus moot, and this court is without jurisdiction to act. See Siegelman v. Alabama Ass'n of SchoolBds., 819 So.2d 568 (Ala. 2001). We therefore conclude that these appeals are due to be dismissed. *Page 297 
The Lowndes County Declaratory-Judgment Action
On August 4, 2000, ADS and the County filed in the Lowndes Circuit Court a complaint for a declaratory judgment, pursuant to § 6-6-220
et seq., Ala. Code 1975, against Lowndesboro, the mayor of Lowndesboro, and the members of the Lowndesboro town council in their individual and official capacities, seeking to have Ordinance 98-1 declared void and unconstitutional.
On October 3, 2000, Lowndesboro filed an answer to the complaint, a motion to dismiss, and a counterclaim against the County, alleging that the County's "resolution [granting host-government approval] purportedly enacted in August 1998 is invalid and due to be set aside." Lowndesboro offered numerous reasons supporting its position that the County's resolution granting host-government approval was invalid and that the County's resulting contract with ADS was, therefore, also invalid.[5]
On October 10, 2000, ADS and the County filed summary-judgment motions on their declaratory-judgment claims and on Lowndesboro's counterclaim against the County. Thereafter, in November 2000, Lowndesboro filed three amended answers. After granting one continuance, the Lowndes Circuit Court held a hearing on December 4, 2000, on the summary-judgment motions filed by ADS and the County, despite Lowndesboro's (unsuccessful) attempt to be allowed further discovery on its counterclaim. On January 26, 2001, the Lowndes Circuit Court entered a judgment declaring Ordinance 98-1 invalid and unconstitutional and enjoining Lowndesboro from enforcing the ordinance. The judgment also held that Lowndesboro's counterclaim against the County was barred by § 11-12-8, Ala. Code 1975, the statute of nonclaims, because it had not been presented to the County within the one-year period provided in that statute. Lowndesboro has appealed from that judgment.
Because the facts of this case are essentially undisputed, this court must determine whether the trial court misapplied the law to the undisputed facts. Therefore, this court's standard of review is de novo, and no presumption of correctness inures in favor of the trial court. Exparte Graham, 702 So.2d 1215 (Ala. 1997); Roberts Health Care, Inc. v.State Health Planning Dev. Agency, 698 So.2d 106 (Ala. 1997); Carterv. City of Haleyville, 669 So.2d 812 (Ala. 1995).
Lowndesboro raises three procedural issues and one substantive issue. The procedural issues are whether ADS and the County failed to demonstrate a justiciable controversy, whether Lowndesboro's counterclaim(s) were barred by the statute of nonclaims, and whether the trial court erred in entering a summary judgment without allowing Lowndesboro to conduct discovery. The substantive issue raised is whether the trial court erred in invalidating Ordinance 98-1 on the grounds that it was inconsistent with the Solid Waste Act and that it violated the Alabama Constitution of 1901. We first address the procedural issues raised by Lowndesboro.
A. Justiciable Controversy
Lowndesboro argues that ADS and the County do not present a justiciable controversy ripe for review. Lowndesboro argues that a justiciable controversy does not exist as to ADS because, it says, ADS *Page 298 
does not have a present right to begin construction of the landfill because ADS has not obtained a National Pollutant Discharge Elimination System permit.[6] Lowndesboro argues that a justiciable controversy does not exist as to the County because, Lowndesboro says, the County does not have the present right to receive tipping fees until the landfill is completed and is receiving solid waste. One of the most useful fields of operation for declaratory-judgment statutes is to allow courts to settle questions regarding the validity of statutes so that the perils of proceeding under void enactments are thereby avoided. See Kleinv. Jefferson County Bldg. Loan Assoc., 239 Ala. 460, 195 So. 593
(1940); Ellis v. Pope, 709 So.2d 1161 (Ala. 1997). In Chapman v. City ofTroy, 241 Ala. 637, 4 So.2d 1 (1941), our Supreme Court stated that the predecessor statute to § 6-6-223 "expressly looks to a declaration of property rights dependent on the construction or validity of a municipal ordinance." 241 Ala. at 638, 4 So.2d at 2.
At the time this action was filed, the County had the right, pursuant to § 22-27-47(a), to oversee the management of solid-waste disposal within the County. The County had a solid-waste plan in place; Lowndesboro did not. The County also had a contract with ADS and had the right to receive the benefits of that contract, although the benefits were contingent on issuance of the proper permits. The ordinance rendered those rights uncertain, causing the issue of the validity of that ordinance to be ripe for review under § 6-6-223. Lowndesboro's enactment of Ordinance 98-1 created a conflict between the County and Lowndesboro over who had authority to manage solid-waste disposal in the police jurisdiction of Lowndesboro. Here, the ordinance declares invalid the very activity authorized by both the State and the County in which the municipality is located.
Legal issues relating to host-government approval may be ripe for review, regardless of whether all necessary permits have been obtained. In Fitzjarrald v. City of Huntsville, 597 So.2d 1378 (Ala.Civ.App. 1992), citizens sought a declaratory judgment and preliminary and permanent injunctions preventing the City of Huntsville and its solid-waste-disposal authority from locating solid-waste landfills in a portion of Limestone County located within the city limits of Huntsville. The circuit court concluded that because ADEM had issued no permit to locate a solid-waste landfill in Limestone County, "`the issue [was] moot and premature and a justiciable controversy [did] not exist at the present time.'" 597 So.2d at 1379. This court reversed the judgment of the circuit court and held that the complaint stated justiciable claims that would entitle the citizens to equitable relief. In doing so, this court noted: "It does not matter that ADEM has not issued a permit yet. ADEM's decision is separate and apart from the city's decision." 597 So.2d at 1380.[7] *Page 299 
We conclude that ADS and the County presented a justiciable controversy ripe for review. The complaint filed by ADS and the County stated claims that, if proven, would entitle them to equitable relief; thus, a justiciable controversy existed at the time the complaint was filed. SeeStringfellow v. State Farm Life Ins. Co., 743 So.2d 439, 441 (Ala. 1999); Save Our Streams, Inc. v. Pegues, 541 So.2d 546, 548-49
(Ala.Civ.App. 1988) (stating that a complaint for declaratory judgment is ripe for review if a justiciable controversy exists at the time the complaint is filed), cert. denied, 541 So.2d 549 (Ala. 1989).
Lowndesboro's Counterclaim and the Statute of Nonclaims
Lowndesboro argues that its "counterclaims" against the County are not barred by the statute of nonclaims, § 11-12-8, Ala. Code 1975,[8]
because, Lowndesboro says, there is no justiciable controversy and it is therefore impossible for its claims to be barred by the statute of nonclaims. Because we have concluded that there indeed was a justiciable controversy, this argument does not support reversal of the trial court's judgment.
Alternatively, Lowndesboro argues that either its counterclaim was asserted within 12 months of the accrual of its cause of action or that the claims stated therein "relate back" to December 8, 1998, the date the ordinance was passed. Lowndesboro also argues that even if the statute of nonclaims bars its claims against the County, its claims against ADS are not barred.
First, from our review of the answer and the three amended answers filed by Lowndesboro in this case, we conclude, as did the Lowndes Circuit Court, that Lowndesboro filed only one counterclaim against the County on October 2, 2000, as part of its initial answer to ADS and the County's complaint. That single claim against the County alleged that the County's resolution granting host-government approval for the ADS landfill was invalid and was due to be set aside. We conclude that no claim was asserted against ADS. Lowndesboro's attempt to characterize portions of its amended answers as separate claims is without merit. Lowndesboro clearly labeled and set out its counterclaim against the County in its first answer.[9]
Lowndesboro argues that its claim "relates back" to December 8, 1998, the date the ordinance was passed, and that its notice of claim was therefore timely.[10] However, the statute of nonclaims is not a statute of limitations to which principles such as "relation back" apply; rather, *Page 300 
it is an absolute bar to claims against a County. See City of Birminghamv. Davis, 613 So.2d 1222 (Ala. 1992). In Davis, the Supreme Court held that the "relation back" rule under Rule 13(c), Ala.R.Civ.P., and other procedural rules designed to heal violations of the statute of limitations, cannot "heal" violations of notice-of-claims statutes. 613 So.2d at 1224. Davis specifically overruled Browning v. City of Gadsden,359 So.2d 361 (Ala. 1978), wherein the Supreme Court had allowed the substitution of a municipality for a fictitiously named party to "relate back" to the filing of the original complaint for purposes of the notice-of-claim statute, § 11-47-23, Ala. Code 1975 (formerly tit. 37, § 476, Ala. Code 1940 (Recomp. 1958)).[11]
Lowndesboro relies on Marvin W. Sumlin Construction Co. v. City ofPrichard, 465 So.2d 371 (Ala. 1985), as authority for allowing a counterclaim to relate back under Rule 13(c) for purposes of a nonclaim statute. In City of Prichard, the City of Prichard sued Marvin W. Sumlin Construction Company, Inc. ("Sumlin"), for breach of contract, and Sumlin filed a counterclaim arising out of the same contract. The trial court dismissed the counterclaim based on Sumlin's failure to comply with § 11-47-23. The Supreme Court reversed the trial court's judgment and stated: "Rule 13(c) . . . provides that `All counterclaims other than those maturing or acquired after pleading shall relate back to the time the original plaintiff's claim arose.' (Emphasis added.) Thus, Sumlin's counterclaim should be considered as having been filed well before the expiration of the two-year limitations period of § 11-47-23." 465 So.2d at 373. The Alabama Supreme Court did not cite any authority inCity of Prichard for applying Rule 13(c) to the statute of nonclaims,[12]
and to the extent City of Prichard conflicts with Davis, we recognize that Davis implicitly overruled City of Prichard. We therefore conclude that Lowndesboro's claim against the County was barred by the statute of nonclaims.
C. Further Discovery
Lowndesboro argues that the Lowndes Circuit Court abused its discretion in not allowing discovery. That court concluded that extended discovery on the issues addressed in the summary-judgment motions was not warranted because all of the issues presented were pure questions of law. Discovery matters are well within the trial court's discretion. See, e.g., Gollottev. Peterbilt of Mobile, Inc., 582 So.2d 459 (Ala. 1991); see alsoNaramore v. Duckworth-Morris Realty Co., 669 So.2d 946 (Ala.Civ.App. 1996) (stating that the trial court had discretion to rule on a summary-judgment motion before the completion of discovery). We conclude that the trial court did not abuse its discretion in determining that no further factual development was necessary in order for it to assess whether the ordinance was facially valid and constitutional or whether Lowndesboro had asserted its counterclaim against the County within the 12-month nonclaim period.
D. Validity of the Ordinance
Lowndesboro argues that its ordinance is not inconsistent with the Solid Waste *Page 301 
Act and that it does not violate the Alabama Constitution of 1901. Lowndesboro relies on Brooks v. City of Birmingham, 389 So.2d 578, 580
(Ala.Crim.App. 1980), for the principle that an ordinance that enlarges upon the provisions of a statute creates no "conflict." Lowndesboro argues that under § 11-47-130, Ala. Code 1975, it has the power to maintain health and cleanliness within its police jurisdiction, and that under § 11-40-10, Ala. Code 1975, Lowndesboro's police jurisdiction extends for 1.5 miles beyond its corporate limits. Lowndesboro also argues that Ala. Admin. Code, r. § 335-13-1-.04,[13] gives it the authority to adopt more stringent requirements than the requirements included in the Solid Waste Act.
ADS and the County argue that the ordinance is inconsistent with the Solid Waste Act, and that under § 89 of the Alabama Constitution of 1901, a municipality is prohibited from adopting any ordinance inconsistent with the laws of this State. ADS and the County also argue that under § 22-27-47(a), Ala. Code 1975, a city's authority to regulate solid waste ends at its city limits; that the ordinance violates § 22-27-48(a), Ala. Code 1975, because it does not address six mandatory factors in determining whether to approve a landfill; that the County clearly was the "host government" under § 22-27-48(a) because it had a solid-waste plan and Lowndesboro did not; and that because Lowndesboro had not opted out of the County's plan, it would have to consider any solid-waste-landfill proposal within its jurisdiction under the County's plan. ADS and the County also argue that the ordinance violates the Alabama Constitution's provisions regarding due process, contracts, and takings.
We conclude that the ordinance is inconsistent with the Solid Waste Act and that it is therefore void. A municipality, such as Lowndesboro, is expressly prohibited under Alabama law from adopting any ordinance that is inconsistent with the laws of this State. See § 89, Ala. Const. 1901; § 11-45-1, Ala. Code 1975. An ordinance may be "inconsistent" with State law if it prohibits conduct permitted under State law. See,e.g., Congo v. State, 409 So.2d 475 (Ala.Crim.App. 1981). In Brooks,supra, the Court of Criminal Appeals stated:
 "We think a correct determination of the particular issue is to be found in the conclusions reached by Judge DeCarlo in Atkins [v. City of Tarrant City, 369 So.2d 322 (Ala.Crim.App. 1979)], wherein he soundly sets forth differences between municipal ordinances and general laws of a state that constitute inconsistency and those that do not constitute inconsistency.
 "`Whether an ordinance is inconsistent with the general law of the State is to be determined by whether the local law prohibits anything which the State law permits. Ligon v. City of Gadsden, [21 Ala. App. 312, 107 So. 733] supra. See also Kim v. Town of Orangetown, 66 Misc.2d 364, 321 N.Y.S.2d 724.' Atkins, supra, at 369 So.2d 325."
389 So.2d at 580.
In Town of Eclectic v. Mays, 547 So.2d 96 (Ala. 1989), the Supreme Court struck down a portion of a municipal ordinance providing that a person who did not pay garbage-service fees could be fined up to $500 and imprisoned for up to six months. *Page 302 
In holding that that portion of the ordinance was inconsistent with the Solid Waste Disposal Act, the Supreme Court stated:
 "Section 22-27-5(e) expressly addresses `nonpayment of fees.' The statute provides:
 "`. . .[I]f the fees, charges, or rates for the services furnished . . . shall not be paid within 30 days after the same shall become due and payable, [the] municipality may, at the expiration of such 30 day period, suspend such services or may proceed to recover the amount of any such delinquency with interest in a civil action, or both.'
 "The statute does not permit either the fines or the imprisonment that Ordinance 34 would impose. A municipal corporation shall not pass any laws inconsistent with the general laws of this state. Ala. Const., Art. IV, § 89. Accordingly, the portion of Ordinance 34 that imposes fines and imprisonment for not paying the garbage service fees is inconsistent with state law, and the trial court did not err in striking that part of the ordinance."
547 So.2d at 101-02.
Alabama's Solid Waste Act requires that local jurisdictions implement and follow a local solid-waste-management plan in deciding where to locate a landfill. See § 22-27-47, Ala. Code 1975. Accordingly, the ordinance's blanket prohibition of all landfills within the city limits or police jurisdiction of Lowndesboro prohibits activity that the Solid Waste Act specifically permits, and the ordinance is therefore irreconcilable with the Solid Waste Act. An ordinance that is inconsistent with State law is void. Atkins, 369 So.2d at 325.
We reject Lowndesboro's argument that the ordinance may be a valid exercise of a municipality's power, pursuant to §§ 11-40-10 and11-47-130, to maintain health and cleanliness within its police jurisdiction. In a sense, any municipal ordinance relating to landfills would relate to the "health and cleanliness" protection of a city; however, we conclude that, with respect to the "siting" of landfills, §§ 22-27-47 and 22-27-48 take precedent over and preempt the general statutes, §§ 11-40-10 and 11-47-130. Section 22-1-2, Ala. Code 1975, provides: "In the event that any of the provisions of Title 11 of this Code relating to municipal corporations shall be in conflict with any of the provisions of the general health and quarantine laws of the state, the provisions of such general health and quarantine laws shall prevail." Sections 22-27-47 and 22-27-48 require that local solid-waste-management decisions must be made in accordance with a local solid-waste-management plan, and that any local ordinances that do not include a local solid-waste-management plan are void as inconsistent with State law. Under Article 3, local municipalities are not given carte blanche authority to manage solid-waste decisions, but must follow the statutory procedures set out in §§ 22-27-47 and 22-27-48. Moreover, § 22-27-47
limits a municipality's authority to regulate solid waste to its "city limits." The wording of both § 11-47-130 and § 11-40-10
implicitly recognizes that there is a distinction between "city limits" and "police jurisdiction."[14] The *Page 303 
boundaries of a city's authority under Article 3 are specifically stated in § 22-27-47(a), which provides, in pertinent part: "any municipality may choose to submit its own Solid Waste Management Plan intended for implementation within its city limits . . . ." (emphasis added). To the extent there is any conflict between § 22-27-47(a) (included in Title 22) and § 11-40-10 (included in Title 11), §22-27-47(a) of Title 22 controls. See § 22-1-2, supra. We conclude that Lowndesboro's authority to regulate solid waste extends only to its "city limits," and, under the express statutory language used in §22-27-47(a), does not include its police jurisdiction.
In light of the foregoing, the judgment of the Lowndes Circuit Court is due to be affirmed. Therefore, we do not reach the remaining constitutional grounds asserted in support of the judgment of the Lowndes Circuit Court.
2000294 — APPEAL DISMISSED.
2000324 — APPEAL DISMISSED.
2000633 — AFFIRMED.
Yates, P.J., and Crawley, Thompson, and Pittman, JJ., concur.
[1] The proposed landfill site consists of approximately 647 acres. The "footprint," which is the actual disposal area of the landfill, consists of 235 acres. The 20 acres located within the police jurisdiction of Lowndesboro are part of the footprint.
[2] ADS has not applied for a National Pollutant Discharge Elimination System ("NPDES") permit, which is a separate permit required for the operation of a landfill.
[3] In 1989, the Legislature amended the Solid Waste Act, § 22-27-1
et seq., to add Article 3 regarding solid-waste-management plans (see
§ 22-27-40 et seq.). This legislation was enacted in response to the Federal Resource Conservation and Recovery Act, 42 U.S.C. § 6941 et seq. ("RCRA"). The purpose of RCRA was to assist and to encourage the development of comprehensive state, local, and regional planning for solid-waste management. See 42 U.S.C. § 6941.
[4] On March 1, 2002, the Montgomery Circuit Court issued a judgment holding the ADEM permit invalid because of various alleged notice deficiencies. That judgment is not at issue in this appeal.
[5] Lowndesboro alleges numerous reasons why the resulting contract was invalid; however, Lowndesboro did not file a counterclaim against ADS. We will address the effect of that omission later in this opinion.
[6] At the hearing held on December 4, 2000, counsel for ADS stated that "we concede that we can't construct and operate a landfill without the [NPDES] permit being actually issued." See note 2, supra, also.
[7] In Fitzjarrald, 597 So.2d at 1379, this court stated:
 "The statute is clear that `[a] governing body may . . . approve [or disapprove] disposal sites in its jurisdiction in accord with the plan approved for its jurisdiction.' § 22-27-48(a). The statute is also clear that the local approval is `in addition to any other approvals required from other regulatory authorities and shall be made prior to any other approvals necessary.' § 22-27-48(a) (emphasis added [in Fitzjarrald]). Moreover, ADEM may not even consider a permit application unless it has already been approved by the local government unit. § 22-27-48(a)."
[8] Section 11-12-8, the statute of nonclaims, provides, in pertinent part: "All claims against counties must be presented for allowance within 12 months after the time they accrue or become payable or the same are barred . . . ."
[9] We also note that counsel for Lowndesboro stated at the hearing on the summary-judgment motions that its "claim" was more in the nature of an "affirmative defense."
[10] ADS and the County argue that Lowndesboro did not raise this issue at the circuit-court level and cannot raise it for the first time on appeal. See Hargrove v. Cantrell, 547 So.2d 488 (Ala. 1989); Conley v.Beaver, 437 So.2d 1267 (Ala. 1983); White v. Riley Constr., Inc.,745 So.2d 877 (Ala.Civ.App. 1999). However, in Beavers v. County ofWalker, 645 So.2d 1365, 1372 (Ala. 1994), the Supreme Court held that a party can raise different reasons and arguments on appeal supporting an issue raised at the trial court level, and Lowndesboro's "relation back" contention appears to be in the nature of such permissible "different reasons and arguments."
[11] Section 11-47-23, the nonclaim statute for municipalities, provides, in pertinent part: "All claims against the municipality . . . shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred."
[12] We note that at the time City of Prichard was decided, Browning
had not been overruled.
[13] Ala. Admin. Code, r. 335-13-1-.04, provides, in pertinent part, that "[n]othing in these rules and regulations shall be construed to limit the authority of municipal and county governments, solid waste authorities, . . . from adopting more stringent solid waste management requirements than those set forth in this Division."
[14] Section 11-47-130 provides that a municipality has "the power to maintain the health and cleanliness of the city . . . within its limits and within the police jurisdiction thereof," and § 11-40-10 provides that a municipal ordinance "enforcing police or sanitary regulations and prescribing fines and penalties for violations thereof shall have force and effect in the limits of the city or town and in the police jurisdiction thereof . . . ."